UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 4, 2017

LETTER TO COUNSEL

RE: *Sonya Somerville v. Commissioner, Social Security Administration*
Civil No. SAG-16-3358

Dear Counsel:

On October 6, 2016, Plaintiff Sonya N. Somerville petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and related filings, including Plaintiff's supplemental briefing regarding the impact of the Fourth Circuit's recent decision in *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017).[1] (ECF Nos. 16, 20, 21, 22). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Ms. Somerville protectively filed her claims for DIB and SSI on June 24, 2010 and October 21, 2010, respectively. (Tr. 366-74; Tr. 375-83). She alleged a disability onset date of January 23, 2009. *Id.* Her claims were denied initially and on reconsideration. (Tr. 156-88). A hearing was held on November 20, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 84-151). Following the hearing, the ALJ determined that Ms. Somerville was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 189-208). The Appeals Council granted Ms. Somerville's request for review and issued an order remanding the case to an ALJ. (Tr. 209-13). On February 11, 2015, a hearing was held before a new ALJ. (Tr. 41-83). On March 25, 2015, the ALJ denied Ms. Somerville's claims for DIB and SSI. (Tr. 17-40). The Appeals Council denied Ms. Somerville's request for review, so the ALJ's 2015 decision constitutes the final, reviewable decision of the Agency. (Tr. 1-6).

The ALJ found that Ms. Somerville suffered from the severe impairments of degenerative disc disease of the lumbar and cervical spines, and depression. (Tr. 23). Despite these

---

[1] The parties were notified of the potentially relevant ruling in *Lewis* in a letter order dated June 5, 2017. (ECF No. 17). Plaintiff filed her supplemental brief on June 19, 2017, (ECF No. 20), and the Commissioner timely incorporated a response to Plaintiff's *Lewis* argument within her Motion for Summary Judgment on June 21, 2017. (ECF No. 21-1).

impairments, the ALJ determined that Ms. Somerville retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can have occasional exposure to extreme cold, vibration, and hazards, such as moving machinery and heights; and is limited to simple, routine, repetitive tasks, with no fast pace or strict production requirements, and only occasional changes in the work setting.

(Tr. 25). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Somerville could perform jobs existing in significant numbers in the national economy, and that, therefore, she was not disabled. (Tr. 32-33).

Ms. Somerville raises four primary arguments on appeal: (1) that the ALJ failed to determine that Ms. Somerville met Medical Listing 1.04A; (2) that the ALJ failed to properly evaluate Ms. Somerville's mental impairments pursuant to the "Special Technique" set out in 20 C.F.R. §§ 404.1520a and 416.920a; (3) that the ALJ erred at step two of the sequential evaluation by failing to properly consider the symptom-related functional limitations stemming from Ms. Somerville's non-severe impairments; and (4) that the ALJ failed to apply the proper legal standard in discrediting Ms. Somerville's evidence of pain and the opinions of her treating physicians. Pl.'s Mot. [ECF No. 16, 7-31]; Pl.'s Suppl. Mot. [ECF No. 20]. These arguments are addressed, in turn, below.

> I. **Medical Listing Issue 1.04(A)**

Ms. Somerville argues that the ALJ's medical listing analysis violated the Fourth Circuit's mandate in *Fox v. Colvin*, 632 Fed. App'x. 750 (4th Cir. 2015). Pl.'s Mot. [ECF No. 16, 7-24]. Step three requires the ALJ to determine whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings describe each of the major body system impairments that the Agency "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). In *Fox*, the Fourth Circuit held that the ALJ's medical listing analysis was deficient because it consisted of conclusory statements and did not include "any 'specific application of the pertinent legal requirements to the record evidence.'" *Id.* at 754 (quoting *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)). That is, the ALJ did not apply any findings or medical evidence to the identified disability listings and offered nothing to reveal why he was making his decision. *Radford*, 734 F.3d at 295. Thus, *Fox* requires that an ALJ provide express analysis, with factual support, to conclude that a medical listing has not been met at step three. The Fourth Circuit also rejected the notion that failure to engage in meaningful analysis at step three could constitute harmless error where the evidence of record otherwise demonstrated that the claimant did not meet a listing. *Fox*, 632 Fed. App'x. at 755. Rather, the *Fox* Court emphasized that it is not this Court's

role to "engage[] in an analysis that the ALJ should have done in the first instance," or "to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Id.* The Court noted that it could not conduct a meaningful review "when there is nothing on which to base a review." *Id.*

In the instant case, regarding his findings at step three of the sequential evaluation, the ALJ stated, in relevant part:

> [Plaintiff's] spinal disorder fails to meet the criteria of section 1.04 in that there is no compromise of a nerve root or the spinal cord. Nor is there any evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation or motion of the spine, or motor loss accompanied by sensory or reflex loss and there is no positive straight-leg raising test. There is no spinal archnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours. The claimant does not have lumbar spinal stenosis resulting in pseudoclaudication, established by finding on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in section 1.00B2b.

(Tr. 24). Medical Listing 1.04 is defined as, "Disorders of the spine … resulting in compromise of a nerve root … or the spinal cord. With A. Evidence of nerve root compression … OR B. Spinal arachnoiditis … OR C. Lumbar spinal stenosis. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04. In order to meet a Medical Listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 391 (D. Md. 2000) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

Here, the ALJ's analysis contains at least two misrepresentations of the medical evidence. First, the ALJ asserts that there is no "evidence of nerve root compression," even though Ms. Somerville's physician expressly diagnosed "nerve compression" on one occasion. (Tr. 661). Second, the ALJ stated in his 1.04 analysis that "there is no positive straight-leg raising test," (Tr. 24), but then proceeded to discuss several positive tests throughout the RFC analysis. (Tr. 26- 27). Ms. Somerville has cited evidence which, in her view, fulfills the requirements of each of the criteria of Listing 1.04A. Pl.'s Mot. [ECF No. 16, 11-22]. The ALJ's inaccurate and cursory analysis, by contrast, does not permit me to understand how he assessed that evidence. For example, Ms. Somerville cites evidence of motor loss and atrophy in her calf and ankle. *Id.* at 16-17. The Commissioner contends that such motor loss is insufficiently connected to nerve root compression in the lumbar spine. Def.'s Mot. [ECF No. 21-1, 11]. However, in the absence of any analysis by the ALJ, I am unable to understand how, or whether, he evaluated that evidence. Therefore, like in *Fox* and *Radford*, remand is appropriate for additional explanation to permit adequate appellate review of the ALJ's reasoning. In remanding for additional analysis, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Somerville does not meet Listing 1.04A was correct or incorrect.

II. **"Special Technique" Issue**

Ms. Somerville next contends that the ALJ did not appropriately apply the special technique for evaluating mental impairments, and thus that the ALJ's opinion runs afoul of the Fourth Circuit's recent decision in *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656 (4th Cir. 2017). Pl.'s Mot. [ECF No. 16, 25-28]. Specifically, Ms. Somerville alleges that the ALJ erred by: (1) relying "exclusively on Plaintiff's statements regarding her concentration and daily activities, without documenting the significant history, examination and laboratory findings, or functional limitations" and (2) "placing undue weight on [her] household activities in assessing [her] ability to hold a job outside the home." *Id.* at 26-27. I find, however, that the ALJ properly employed the special technique.

As background, at step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments. *Id.* at § 12.00. Each listing therein consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs a "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* at §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth functional area, episodes of decompensation, however, is rated on a four-point scale: none, one or two, three, four or more. *Patterson*, 846 F.3d at 659. In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* at § 12.00(C).

Initially, I note that this case is readily distinguishable from *Patterson*, in which the ALJ utterly failed to apply the special technique to the evaluation of the claimant's mental impairments. *See Patterson*, 846 F.3d at 662. Instead, in this case, at step three, the ALJ applied the special technique and found that Ms. Somerville has mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 24). Due to the ALJ's analysis, I am able to review and evaluate the merits of the ALJ's application of the special

technique. Moreover, a change in status in any single functional area, even to "marked limitations," would not result in Ms. Somerville having met or equaled a listing.

I find that, contrary to Ms. Somerville's claim, the ALJ complied with Sections 404.1520a(e)(4) and 416.920a(e)(4) and considered Ms. Somerville's "significant history . . . examination and laboratory findings, and the functional limitations . . . in reaching a conclusion about the severity of [her] mental impairment." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). In finding that Ms. Somerville "has mild restriction" in daily activities, for example, responding to Ms. Somerville's claim that her daughter assisted her with all of her daily activities because of pain, the ALJ specifically stated, "[h]owever, as discussed below, the record does not support this statement." (Tr. 24). The ALJ, in his subsequent analysis of Ms. Somerville's depression, found that: (1) primary care records indicated, as of September 30, 2013, that her use of Zoloft rendered her depression "mild and stable;" (2) Ms. Somerville conceded she was not "receiving any type of mental health treatment;" and (3) Dr. Julie Jennings, a State agency psychological consultant, opined that Ms. Somerville had "a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation." (Tr. 29). Thus, the ALJ accorded weight to Ms. Somerville's history, examination and laboratory findings, and functional limitations and did not rely exclusively on Ms. Somerville's own statements in making his determination as to the severity of her mental impairment.

Ms. Somerville also contends that the ALJ "overlooked material opinion evidence" relevant to her mental impairment offered by Dr. Edwin Fulton, who opined that she suffered from: (1) extreme restrictions in daily activities and social functioning and (2) "'[c]onstant' difficulties in maintaining concentration, persistence or pace." Pl.'s Mot. [ECF No. 16, 27-28]. The ALJ, however, referenced this same report (Exhibit 13F), and confirmed that Dr. Fulton believed that Ms. Somerville "has extreme mental limitations, and [that] her medical condition prevents her from working." (Tr. 30). As discussed above, however, the ALJ expressly found that Dr. Fulton's "limitations and findings of disability are not supported by the medical evidence of record," because more recent physical examinations directly contradicted his findings. *Id.* Furthermore, in the context of Ms. Somerville's mental impairment, Defendant correctly points out that Dr. Fulton is "an orthopedic physician . . . not a specialist in the field of psychiatry." Def.'s Mot. [ECF No. 21-1, 16]. Accordingly, I find that the ALJ properly considered the evidence and adhered to the requirements of the special technique in assessing the severity of Ms. Somerville's mental impairment.

### III. Functional Limitations of Non-Severe Impairments

Ms. Somerville next argues that the ALJ erred at step two of the sequential evaluation by classifying her impairments of bilateral carpal tunnel syndrome, plantar fasciitis, and gastroesophageal reflux disease (GERD) with laryngopharyngeal reflux (LPR) as "non-severe impairments pursuant to SSR-96-4p." Pl.'s Mot. [ECF No. 16, 29]; (Tr. 23). Step two is merely a threshold determination of whether a claimant is suffering from a severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 147-48, 107 S.Ct. 2287, 96

L.Ed.2d 119 (1987) (upholding the severity threshold because, "if a claimant is unable to show that he has a medically severe impairment ... there is no reason for the Secretary to consider the claimant's age, education, and work experience"). If a claimant is not suffering from any severe impairment(s), he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If a claimant is found to be suffering from a severe impairment(s), the analysis simply proceeds to the next step. *Id.* Importantly, an ALJ is required to discuss each diagnosis that is supported by objective medical evidence in the claimant's record. *See Boston v. Barnhart*, 332 F. Supp. 2d 879, 885 (D. Md. 2004); *Albert v. Astrue*, 2011 WL 3417109, at *2 (D. Md. July 29, 2011). Finally, this Court has held that an ALJ's failure to consider the severity of a diagnosis at Step Two is harmless where the ALJ corrects his or her error by "fully consider[ing] the impact" of the neglected evidence when determining the claimant's RFC. *See Burroughs v. Comm'r, Soc. Sec. Admin.*, 2015 WL 540719, at *1 (D. Md. Feb. 9, 2015).

With respect to her carpal tunnel syndrome, plantar fasciitis, and GERD with LPR impairments, Ms. Somerville argues that the ALJ "failed to explore all relevant facts and inquire into the issues necessary for adequate development of the record" and instead summarily found the impairments non-severe "sole[ly]" because they were "stable." Pl.'s Mot. [ECF No. 16, 29]. For example, regarding her plantar fasciitis, Ms. Somerville contends that the ALJ ignored reports from 2010 and 2011 demonstrating that the impairment limited her activity and "ability to perform work tasks," and required surgery in December of 2012. *Id.* at 30-31. The ALJ, however, instead relied on more recent documentation and, citing Exhibits 26F/2 and 25F, explained that the records demonstrated the impairments of her foot were "well-controlled on current therapy" and that her GERD with LPR was "managed with Prilosec and Zantac." (Tr. 23). Additionally, the ALJ found that Ms. Somerville had "no evidence of ongoing treatment or recommendations for surgery" pertaining to carpal tunnel syndrome. *Id.* There is thus substantial evidence that these impairments are controlled, do not "cause any functional restrictions" and, as such, are properly classified as non-severe impairments. *Id.*

Assuming, arguendo, that the ALJ erred in his evaluation of Ms. Somerville's carpal tunnel syndrome, plantar fasciitis, and GERD with LPR at Step Two, such error would be harmless. Because Ms. Somerville made the threshold showing that her degenerative disc disease and depression disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and properly considered all of the impairments, both severe and non-severe, that significantly impacted Ms. Somerville's ability to work. See 20 C.F.R. § 404.1523; (Tr. 25). Any Step Two error, then, does not necessitate remand.

IV. *Lewis* Issue

Ms. Somerville's fourth argument raises a *Lewis* issue. As background, on June 2, 2017, the United States Court of Appeals for the Fourth Circuit published its opinion in *Lewis*. The Fourth Circuit determined that remand was required, in part, because "[t]he ALJ's decision applied an improper legal standard to discredit [the claimant's] [credibility]." *Lewis*, 858 F.3d at 870. Specifically, the Fourth Circuit held that the ALJ improperly discounted the claimant's subjective complaints "based solely on the lack of objective evidence" supporting the claimant's

assertions. *Id.* at 866. Social Security regulations do not permit an ALJ to "reject [a claimant's] statements about the intensity and persistence of [] pain or other symptoms or about the effect [those] symptoms have on [a claimant's] ability to work solely because the available objective medical evidence does not substantiate [his or her] statements." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)) (emphasis added); *see* SSR 96-7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). Rather, the Fourth Circuit emphasized that the ALJ failed to "explain in his decision what statements by [the claimant] undercut [the] subjective evidence…as limiting [the claimant's] functional capacity." *Lewis*, 858 F.3d at 866. Accordingly, the *Lewis* Court determined that remand was necessary because the ALJ failed to cite sufficient evidence of the claimant's own statements to discredit her credibility.

In this case, the ALJ found that Ms. Somerville's statements regarding her symptoms were "not entirely credible." (Tr. 28). While relying on *Lewis* to argue that the ALJ "failed to apply the proper legal standard in discrediting [her] evidence of pain," Pl.'s Supp. Mot. [ECF No. 20, 3], Ms. Somerville's Supplemental Motion is not responsive to the issue of whether the ALJ erred in his credibility finding because he failed to "explain in his decision what statements by [Ms. Somerville] undercut [the] subjective evidence…as limiting [her] functional capacity." Instead, Ms. Somerville merely uses *Lewis* to allege that: (1) the "ALJ's summary of the evidence" is not reflective of the record; (2) the ALJ failed to consider record evidence in "evaluating her credibility;" and (3) the record itself "is fully corroborative of Plaintiff's subjective symptoms of pain." *Id.* at 4-5. The Commissioner, meanwhile, contends that *Lewis* does not require an ALJ to support an adverse credibility finding with evidence of a claimant's subjective statements – "[s]uch a ruling would exclude consideration of many categories of evidence that 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), deem relevant in evaluating a claimant's subjective complaints." Def.'s Mot. [ECF No. 21-1, 22]. Instead, the Commissioner argues that the support of other record evidence, such as medical opinion evidence, daily activities, and treatment records, independently satisfies the Fourth Circuit's mandate in *Lewis*. *Id.* at 22-24 (arguing that "*Lewis* has no bearing on this case because the ALJ identified proper rationale in support of the credibility finding other than just objective medical evidence, including discussing plaintiff's treatment regimen . . . .").

The scope of the *Lewis* ruling need not be determined in the instant case because the ALJ, in discounting Ms. Somerville's credibility, expressly cited sufficient evidence of her own statements that were inconsistent with her allegations of physical and mental symptoms. For example, the ALJ noted that Ms. Somerville reported "no complaints" regarding physical symptoms in a 2009 follow-up appointment with her family physician, Dr. Andrew Ferguson. (Tr. 26). Additionally, the ALJ noted Ms. Somerville's admission that the injection treatment she received from Dr. Callahan, an anesthesiologist, provided her with "some relief," and that in October of 2014 Ms. Somerville admitted she was "better than she was prior to surgery . . . ." *Id.* at 27. Furthermore, in regards to Ms. Somerville's mental impairments, the ALJ noted that Ms. Somerville admitted that "she is not receiving any type of mental health treatment." (Tr. 28).

Thus, the ALJ adequately "explain[ed] in [his] decision what statements by [Ms. Somerville] undercut [the] subjective evidence…as limiting [her] functional capacity." *Lewis*, 858 F.3d at 866. Moreover, the ALJ provided substantial objective record evidence to support his conclusion. *See* (Tr. 22-31); *see also* SSR 96-7p, 1996 WL 374186, at *6 (noting that "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is [] one factor that the adjudicator must consider in assessing an individual's credibility."); *see Hines v. Barnhart*, 453 F.3d 559, 565 n. 3 (4th Cir. 2006) (citation omitted). Accordingly, the ALJ properly assessed Ms. Somerville's credibility. Remand on this basis is therefore unwarranted.

## V.     Conclusion

For the reasons set forth above, Ms. Somerville's Motion for Summary Judgment (ECF Nos. 16, 20, 22) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 21-1) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge